IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JPMORGAN CHASE BANK, N.A. and
J.P. MORGAN SECURITIES LLC,
    Plaintiffs,

v.

TIMOTHY SODERQUIST,

    Defendant.

---

**PLAINTIFFS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION**

---

Plaintiffs JPMORGAN CHASE BANK, N.A., and J.P. MORGAN SECURITIES LLC (collectively "JPMorgan" or "Plaintiffs") file this Memorandum of Law in Support of Their Application for Temporary Restraining Order and Temporary Injunction.[1]

## I. PRELIMINARY STATEMENT

Defendant Timothy Soderquist ("Defendant") resigned from JPMorgan on February 18, 2010, and immediately thereafter commenced employment with Morgan Stanley, a direct competitor of JPMorgan. Defendant was employed in JPMorgan's Denver, Colorado office prior to his resignation.

Defendant's post-employment activities are restricted in accordance with JPMorgan's Code of Conduct and the Supervision, Confidentiality, and Non-Solicitation Agreement (PCS) (the "Non-Solicitation Agreement") to which he agreed to be bound. Defendant agreed that if he left employment with JPMorgan, he would be restricted from (1) soliciting JPMorgan's customers for one year, (2) using, disclosing, or transmitting confidential and proprietary information pertaining to JPMorgan and its customers, and (3) soliciting JPMorgan employees to violate their agreements with JPMorgan. Furthermore, Defendant agreed that a violation of the non-solicitation covenant "will cause immediate and irreparable injury to [JPMorgan] that cannot be adequately remedied by monetary damages and will entitle [JPMorgan] to immediate

---

[1] Simultaneous with the commencement of this action, Plaintiffs will commence before FINRA Dispute Resolution an arbitration proceeding seeking permanent injunctive relief against Defendant and his new employer, Morgan Stanley Smith Barney LLC ("Morgan Stanley"), a direct competitor of JPMorgan. Pending final determination in arbitration, Plaintiffs are entitled to seek preliminary injunctive relief from this Court, even though the merits of the dispute between the parties ultimately will be resolved in arbitration. Rule 13804 of the FINRA Code of Arbitration Procedure for Industry Disputes requires a party seeking interim injunctive relief to obtain such relief from a court of competent jurisdiction. A copy of this Rule is annexed to the Declaration of Randall Hammond as Exhibit A.

injunctive relief and/or specific performance in any court of competent jurisdiction."[2]

At the time Defendant left JPMorgan, he serviced approximately 103 of JPMorgan's clients, all, or nearly all, of whom were existing JPMorgan clients at the time they were assigned to Defendant, representing approximately $356 million in assets under management.

Prior to and upon leaving JPMorgan, Defendant misappropriated JPMorgan's confidential customer information and is using this information to solicit JPMorgan's clients, in violation of his obligations to JPMorgan. In addition, Defendant violated his agreement with JPMorgan by soliciting his colleague, Daniel Winckler ("Winckler") to resign from JPMorgan and join him at Morgan Stanley. Such wrongdoing threatens JPMorgan with irreparable harm in a variety of ways, including present and future economic loss, disclosure of proprietary and confidential business and customer information, loss of goodwill and business reputation and injury to office stability. For these reasons, JPMorgan asks the Court to enter a Temporary Restraining Order to restrain Defendant (and those acting in concert with him) from continuing to violate his obligations until a temporary injunction hearing may be held. JPMorgan further asks the Court to enter a Preliminary Injunction after an evidentiary hearing.

## II. ARGUMENT AND AUTHORITES

A. **JPMORGAN IS ENTITLED TO SEEK TEMPORARY INJUNCTIVE RELIEF IN THIS COURT PENDING ARBITRATION**

Even where a dispute (as here) is ultimately to be resolved in arbitration, JPMorgan is entitled to injunctive relief pending the outcome in arbitration. Many courts have held that a court can grant injunctive relief in an arbitrable dispute pending arbitration, as long as the prerequisites for injunctive relief are satisfied. See, e.g., Merrill Lynch, Pierce, Fenner & Smith,

---

[2] Additionally, Defendant agreed to similar post-termination restrictions contained in the Terms and Conditions covering JPMorgan's Long Term Incentive Plan stock grants (the "LTIP"), in which he participated.

Inc. v. Dutton, 844 F.2d 726 (10th Cir. 1988); Arapahoe County Public Airport Authority v. Centennial Exp. Airlines, Inc., 956 P.2d 587 (Colo. 1998); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. District Court In and For City of Denver, 672 P.2d 1015 (Colo. 1983).

**B.**     **JPMORGAN IS ENTITLED TO A TEMPORARY RESTRAINING ORDER**

During his employment with JPMorgan, Defendant expressly promised, in the Code of Conduct and the Non-Solicitation Agreement, not to utilize JPMorgan's confidential and trade secret information to solicit JPMorgan's clients and not to induce the clients to transfer their accounts to a competitor of JPMorgan.  Specifically, Defendant agreed that for a period of one year after the termination of his employment, he would not solicit JPMorgan customers whom he serviced or became known to him at JPMorgan.  Defendant, however, has violated his obligations and duties to JPMorgan.  JPMorgan does not seek to bar Defendant from competing with JPMorgan. JPMorgan is instead attempting to protect its business from the pirating of clients and employees, and the misuse of confidential and trade secret information to solicit and take its clients, in conformity with the Defendant's Non-Solicitation Agreement.

JPMorgan will sustain immediate and irreparable injury if a temporary restraining order is not issued.  As a result of Defendant's violations of his obligations, JPMorgan has suffered and will continue to suffer irreparable harm, and is entitled to an order restraining such conduct until a temporary injunction hearing may be set and heard.

**C.**     **JPMORGAN IS ENTITLED TO A TEMPORARY INJUNCTION**

**1.**     **Judicial Standard**

The requirements for injunctive relief are well-established.  A party seeking injunctive relief must demonstrate:

> (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor;

and (4) that the injunction is in the public interest.

<u>Chamber of Commerce of U.S. v. Edmondson</u>, 594 F.3d 742, 764 (10th Cir. 2010).

As is established below, the requirements for injunctive relief are met here, and therefore, a temporary injunction should be issued restraining Defendant from soliciting any JPMorgan clients to join him at a competitor, from soliciting JPMorgan employees to join him at a competitor, and from using JPMorgan's confidential information. Such an order is necessary in order to preserve the status quo pending arbitration before FINRA.

**2.     Courts Have Uniformly Recognized The Right Of A
        <u>Securities Firm To Injunctive Relief Under Similar Circumstances</u>**

Courts considering circumstances similar to those here have repeatedly held in favor of injunctive relief to prohibit the solicitation of the former employer's clients or to protect the misappropriation of confidential client and trade secret information prior to an adjudication on the merits. <u>See</u>, <u>e.g.</u>, <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton</u>, 844 F.2d 726 (10th Cir. 1988); <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano</u>, 999 F.2d 211 (7th Cir. 1993); <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham</u>, 658 F.2d 1098 (5th Cir. 1981). In fact, JPMorgan has obtained injunctions under substantially similar circumstances from other Federal courts. <u>See</u> Orders attached hereto as <u>Exhibits A</u>, <u>B</u>, <u>C</u> and <u>D</u>. In view of the consistency with which courts have enforced such restrictions through temporary injunctive relief, JPMorgan's entitlement to such relief at this stage cannot be seriously disputed.

In accepting employment with JPMorgan, Defendant expressly promised, in the Code of Conduct and the Non-Solicitation Agreement, not to solicit JPMorgan's clients and not to induce the clients to transfer their accounts to a competitor of JPMorgan. Defendant agreed that for a period of one year after the termination of his employment, he would not solicit JPMorgan customers whom he serviced or became known to him at JPMorgan. Defendant, however, has

5

violated his obligations to JPMorgan. JPMorgan does not seek to bar Defendant from earning a living, even though his doing so will be with a competitor in the same locale. JPMorgan is merely attempting to protect its business from the pirating of clients and the misuse of confidential information to steal its clients.

### 3. JPMorgan Satisfies All Requirements For Injunctive Relief

#### a. JPMorgan Is Likely To Succeed On The Merits

JPMorgan is entitled to injunctive relief to prevent Defendant from violating his obligations to JPMorgan not to solicit JPMorgan's clients and from disclosing JPMorgan's confidential and proprietary documents and information and trade secrets. Defendant expressly agreed not to solicit JPMorgan's clients or employees for a period of one year following the termination of his employment. Further, Defendant had access to confidential and proprietary business and financial information concerning, inter alia, JPMorgan and its clients, which he expressly agreed not to disseminate or make use of, and to promptly return this information and materials after his affiliation with JPMorgan terminated. Defendant, however, has misused this confidential and proprietary business documents and information in violation of Colorado and New York law.

Federal and State courts around the country have recognized the right of financial services firms to obtain injunctive relief against former employees under similar circumstances. See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton, 844 F.2d 726 (10th Cir. 1988); Merrill Lynch, Pierce, Fenner & Smith Inc. v. Bradley, 756 F.2d 1048 (4th Cir. 1985); Wachovia Ins. Services, Inc. v. Hinds, No. WDQ-07-2114, 2007 WL 6624611 (D. Md. Aug. 30, 2007); Credit Suisse First Boston, LLC v. Vender, No. 04 C 7631, 2004 WL 2806191 (N.D. Ill. Dec. 3, 2004); Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung, No. CV 01-00659 CBM RCX,

2001 WL 283083 (C.D. Cal. Feb. 2, 2001).

These decisions simply apply the well-established principles that, similar to Colorado law, reasonable limitations on post-employment competition are fully enforceable. The Colorado Court of Appeals held in Flower Haven, Inc. v. Palmer, 502 P.2d 424, 425 (Colo. Ct. App. 1972) that "[i]t is the general rule in Colorado that a covenant not to compete which is reasonable both in duration and in geographic scope will be enforced by injunction." See Saturn Systems, Inc. v. Militare, No. 07CA2453, 2011 WL 543759, at *10 (Colo. App. Feb. 17, 2011)("the nonsolicitation clause restricting [Defendant's] ability to solicit [Plaintiff's] clients for one year was necessary to protect [Plaintiff's] confidential client" information); DoubleClick, Inc. v. Paikin, 402 F. Supp.2d 1251, 1259 (D. Colo. 2005)(granting injunction to enforce terms of agreement. The duration of the non-compete clause, 18 months, "is well within terms approved by Colorado courts. Even though no geographic limitation exists here, Colorado courts have approved nationwide restrictions"). Indeed, a former employer's interest in confidential customer information is so fundamental that it will be protected even in the absence of contractual confidentiality provisions. See Harvey Barnett, Inc. v. Shidler, 200 Fed. Appx. 734, 741 (10th Cir. 2006)("under the common law, even in the absence of a written contract, and employee has a fiduciary obligation to protect confidential information obtained during the course of his employment")(citation omitted).

Under Colorado law, an employer has a protectable interest in its trade secrets that renders noncompete agreements valid.[3]  See Haggard v. Spine, No. 09-cv-00721-CMA-KMT,

---

[3] Defendant's Non-Solicitation Agreement is also enforceable under New York law, which is designated as the choice of law. See, e.g., Garvin GuyButler Corp. v. Cowen & Co., 155 Misc. 2d 39, 45, 588 N.Y.S.2d 56, 61 (N.Y. Sup. Ct. 1992) (granting motion for preliminary injunction enjoining use of confidential proprietary information or trade secrets); Muze, Inc. v. Digital On-Demand, Inc, 123 F.Supp. 2d 118 (S.D.N.Y. 2000) (determining that preliminary injunction was

2009 WL 1655030 (D. Colo. 2009). Pursuant to Colorado statute, "[a]ny covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void, but this subsection (2) shall not apply to: … (b) Any contact for he protection of trade secrets." Colo. Rev. Stat. § 8-2-113(2). Thus, "the Colorado legislature has created an exception to the prohibition on covenants not to compete when the covenant relates to protection of trade secrets." Haggard v. Spine, 2009 WL 1655030, at *16 (D. Colo. 2009)(finding that where a restrictive covenant protects trade secrets, "a preliminary injunction enforcing the restrictive covenants in this case does not violate the public interest"). See also Saturn Systems, Inc. v. Militare, No. 07CA2453, 2011 WL 543759 (Colo. App. Feb. 17, 2011)("an agreement not to solicit an employer's customers is enforceable so long as its purpose is to protect the employer's trade secrets and it is reasonably limited in time and geographic scope"); Gold Messenger, Inc. v. McGuay, 937 P.2d 907, 911 (Colo. App. 1997)(affirming issuance of injunction to enforce covenant and noting that where a covenant not to compete prohibits the use of confidential information to compete unfairly, "by both its purpose and its scope, the covenant is, in essence, for the protection of trade secrets").

Colorado has also adopted the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. § 7-74-101, et seq., which provides, in pertinent part:

> 'Trade secret' means the whole or any portion or phase of any … listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value. To be a 'trade secret' the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.

C.R.S. § 7-74-102(4). When considering whether information constitutes a trade secret, in

---

appropriate).

addition to the statutory factors, a court also examines:

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

Haggard v. Spine, 2009 WL 1655030 at *7. Applying these principals, Colorado federal and state decisions have consistently upheld noncompetition clauses designed to prevent misappropriation of trade secrets, including client relationships or information. See Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125, 1133-34 (10th Cir. 2003) (under Colorado law, covenant not to compete is enforceable where its purpose is to protect trade secrets); Flower Haven, 502 P.2d 424, 425.

In particular, the Colorado courts have held restrictive covenants to be valid where they narrowly limit a former employee's ability to directly compete with the former employer but do not preclude the employee from all employment in that field. See Harvey Barnett, 338 F.3d at 1134 (reversing district court's denial of protection where confidentiality provision "is different from a blanket covenant not to compete in that it does not purport to prevent defendants from teaching swimming to infants using widely known techniques[,] . . . [but] it prevents defendants from teaching infants utilizing the allegedly confidential techniques possessed by [plaintiff]"); Newark Electronics, 1987 WL 880813, at *6 (employment agreement that prevented defendant from working in electronics parts industry in eleven western states for two years post-employment "does not unreasonably prohibit defendant from exercising his skills as a salesman or market analyst"). All of these points are fully applicable to the matter at bar. Based upon these factors, this Court granted an employer's motion for a preliminary injunction to enforce

9

restrictive covenants and enjoin the former employee from disclosing employer's trade secrets or soliciting customers with whom the employee had contact while working for the employer. See id., at *16-17. The result should be the same here.

It is also well-recognized that customer contacts or lists warrant protection as trade secrets. See Haggard v. Spine, 2009 WL 1655030 at *9 (customer information which took years to develop was protectable trade secret); Management Recruiters of Boulder, Inc. v. Miller, 762 P.2d 763, 765-66 (Colo. Ct. App. 1998) (information on candidates of former employer constituted trade secret worthy of protection; former employee was properly precluded from contacting any "candidates" with whom he had "actual contact" while working or former employer); Network Telecomms., Inc. v. Boor-Crepeau, 790 P.2d 901, 902 (Colo. Ct. App. 1990) ("Since the statute plainly says that listings of names may be trade secrets, we conclude that the trial court erred in ruling as a matter of law that listings of customer names cannot be trade secrets.")

In this case, JPMorgan's customer records and information qualify for trade secret protection. Along with its employees, JPMorgan's client relationships are its most important assets. JPMorgan's records contain (among other things) the names of actual and potential customers, addresses and unique investment characteristics and financial data pertaining to its individual customers. This information enabled JPMorgan to serve its customers effectively. In addition, the information contained in JPMorgan's records is not readily available to the general public or JPMorgan's competitors from a telephone book, library, professional directory or other publicly available resource. JPMorgan's competitors do not have access to and cannot independently obtain without a substantial expenditure of time, money and effort the totality of information that Defendant has taken. Indeed, without contacting each customer individually,

JPMorgan's competitors could not acquire access to the information contained in JPMorgan's records regarding income, net worth, investment objectives, prior investment experience, current money balances and the current securities position of JPMorgan customers. Based on these facts, it is clear that JPMorgan's customer records derived independent economic value from not being known to the public or its competitors.

Furthermore, as detailed in the accompanying Declaration of Randall Hammond, JPMorgan employs reasonable efforts to maintain the confidentiality of its records. Specifically, access to the records is restricted to those employees whose jobs require them to refer to this information, duplication of the records is prohibited and there are constant reminders about the confidential nature of the information contained on the records. In Network Telecomms, the court held that among the factors determining whether a customer list constitutes a trade secret under the Colorado Uniform Trade Secrets Act is whether the party seeking protection took "efforts that [were] reasonable under the circumstances to maintain its secrecy." Id. at 902 (internal quotation marks omitted). Such efforts include "advising employees of the existence of a trade secret[ and] limiting access to [it] on a need to know basis." Id. (internal quotation marks omitted). In the instant case, JPMorgan has done both.

In sum, JPMorgan has made a sufficient showing to establish a likelihood and indeed probability of its ultimate success and Defendant should not be allowed to continue to violate his obligations and injure his former employer by soliciting and pirating away JPMorgan's clients by using JPMorgan confidential information.

      **b.**     **No Adequate Remedy At Law Exists**

JPMorgan will suffer irreparable harm in the absence of injunctive relief. A court in equity may not refuse to exercise jurisdiction unless there exists an adequate remedy at law.

None exists here because it is extremely difficult to quantify the future economic losses that JPMorgan will suffer from the loss of its clients and their accounts to a competitor. How many of these clients' accounts would have grown in the future or by how much JPMorgan cannot now calculate. In addition, JPMorgan cannot quantify the loss of client confidence that will occur absent an injunction. The loss of confidence will occur because Defendant has compromised, if not destroyed, JPMorgan's clients' reasonable expectation of privacy. Irreparable harm lies, in part, in the fact that JPMorgan's clients expect their financial information, their market transactions, and their investment assets to be known only to themselves, JPMorgan and JPMorgan's registered representatives.

As a result of Defendant's misconduct, JPMorgan has suffered and will continue to suffer irreparable harm, and, thus, is entitled to preliminary injunctive relief.

    **c.**    **In The Absence Of An Injunction, JPMorgan Will Suffer Irreparable Harm**

JPMorgan will be irreparably harmed by Defendant's refusal to return its confidential and proprietary client information and/or the disclosure of its trade secrets. Colorado courts routinely find that employers will suffer irreparable harm if former employees are not enjoined and restrained from using or disclosing the employer's confidential information and trade secret information to the employer's competitors. Courts, in fact, have held the inadequacy of legal remedies and the threat of irreparable harm to be inherent in such circumstances. See DoubleClick, Inc. v. Paikin, 402 F. Supp.2d 1251, 1260 (D. Colo. 2005)("the difficulty of proving damages in non-competition clause cases has made injunctive relief the preferred remedy in Colorado"). See also Haggard v. Spine, 2009 WL 1655030 at *15 (issuing injunction and noting that if the former employee disclosed employer's "customer data and product development trade secrets to a competitor, money damages would not compensate [employer]

for the resulting injury … money cannot buy goodwill"); Xantrex Technology Inv. v. Advanced Energy Industries, Inc., No. 07-cv-023240WYD-MEH, 2008 WL 2185882, at *14 (D. Colo. May 23, 2008) (enjoining former employee from disseminating employer's trade secrets and noting that "when the evidence shows that the defendants engaged in, or are about to engage in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violation, irreparable harm to the plaintiffs need not be shown").

In Flower Haven, Inc. v. Palmer, 502 P.2d 424 (Colo. App. 1972), the court held that violation of a covenant not to compete necessitated injunctive relief because when a covenant not to compete is violated "the damage is presumed to be irreparable, and the remedy at law is considered inadequate." Id. at 426 (emphasis added), quoting Ditus v. Beahm, 123 Colo. 550, 551-52, 232 P.2d 184, 185 (Colo. 1951). See also Employment Television Enterprises, LLC v. Barocas, 100 P.3d 37, 44 (Colo. App. 2004) ("If there is a valid covenant not to compete, a breach is regarded as the controlling factor and injunctive relief follows almost as a matter of course. Because of the nature of a covenant not to compete, the requirements for a permanent injunction are presumed.") (internal quotation marks omitted).

Colorado courts also recognize that former employees should be enjoined from using their former employers' confidential information to solicit the employers' customers. See e.g., Haggard v. Spine, 2009 WL 1655030; Newark Electronics v. Warnimont, No. Civ. A. 86 F 677, 1987 WL 880813 (D. Colo. Feb. 12, 1987)(issuing injunction enforcing restrictive covenant prohibiting solicitation of employer's customers for two years). See also C.R.S. § 7-74-103 (Colorado Uniform Trade Secrets Act provides that an injunction may issue to prevent actual or threatened misappropriation of a trade secret).

Another aspect of irreparable harm is that office morale and stability will be jeopardized if Defendant is permitted to violate the Code of Conduct with impunity and to pilfer JPMorgan's employees and to dissipate its goodwill. See National Propane Corp. v. Miller, 18 P.3d 782, 786 (Colo. Ct. App. 2001) (company has "[g]oodwill . . .expectation of continued and repeated public patronage").

For all the reasons set forth above, the injury JPMorgan faces is irreparable and cannot later be compensated with money damages.

### d. The Threatened Injury To JPMorgan Outweighs The Potential Harm To Defendant

The risk of irreparable harm to JPMorgan easily outweighs any injury to Defendant. On the one hand, an injunction would safeguard JPMorgan's trade secrets, goodwill, business reputation, methods of business operation, the integrity and viability of its Denver-area offices, and its common law and contractual rights. An injunction would further protect JPMorgan from piracy of its highly sought after skilled employees who have confidential trade secret information. An injunction would also serve to discourage JPMorgan current employees from breaching the Code of Conduct, their fiduciary duties and their duties of loyalty—in addition to deterring JPMorgan's competitors from inducing JPMorgan's employees to do so.

By contrast, Defendant has deliberately breached his commitments to JPMorgan by misappropriating JPMorgan's trade secrets and by inducing or assisting to induce JPMorgan customers to join him at Morgan Stanley. Preventing Defendant from using JPMorgan's confidential and trade secret client information to solicit JPMorgan clients subjects him only to the hardship he inflicted upon himself by violating his fiduciary, contractual, and legal duties. The loss to JPMorgan, then, greatly outweighs any potential harm to Defendant. As the Tenth Circuit observed in Davis v. Mineta, 302 F.3d 1104, 1116 (10th Cir. 2001), "'[t]he self-inflicted

nature of [defendant's] harm … weighs in favor of granting preliminary injunctive relief.'" (citation omitted). See also Statera v. Henrickson, No. 09-cv-01684-JLK-BNB, 2009 WL 2169235, at *4 (D. Colo. July 17, 2009)("[t]he defendants will suffer no harm that is recognized in law if they are prohibited from using information to which they have no legal right. On the other hand, the harm suffered by [their former employer] from the theft and unlawful use of this information is substantial"); Haggard v. Spine, 2009 WL 1655030 at *15 (issuing injunction and stating that if former employee was "allowed to violate the restrictive covenants, [the employer's injury] would be permanent and irreparable; [they] would not be able to un-disclose or recloak any trade secrets exposed" by former employee).

Defendant will not be precluded from engaging in his chosen profession. The injunction sought merely precludes Defendant from doing so in violation of his obligations to JPMorgan. Thus, Defendant would be able to provide services to any company, including Morgan Stanley, as long as he does not use JPMorgan's confidential and trade secret information or solicit JPMorgan's clients in accordance with the Code of Conduct and the Non-Solicitation Agreement. The injunction will only require Defendant to compete fairly. Therefore, the balancing of the equities lies in JPMorgan's favor, and, thus, an injunction should be granted.

### e. **An Injunction Will Not Harm The Public Interest**

Finally, the only public interest at issue in this case is that of enforcing reasonable contracts and protecting a business's investment in its development. In a case similar to the instant one, another district court has observed,

> The public has an interest in preventing unfair competition, commercial piracy, misleading solicitations and in safeguarding the confidentiality of financial records. Consequently, the public interest has been disserved by Defendant' actions. The public has no interest in destroying contracts, rewarding theft, and encouraging unethical business behavior.

Morgan Stanley DW Inc. v. Rothe, 150 F. Supp. 2d 67, 79 (D.D.C. 2001)(quoting IDS Life Ins. Co. v. SunAmerica, Inc., 958 F. Supp. 1258, 1282 (N.D. Ill. 1997) aff'd in part, vacated in part on other grounds sub nom., IDS Life Ins. Co. v. SunAmerica Life Ins. Co., 136 F.3d 537 (7th Cir. 1998). See also Statera v. Henrickson, 2009 WL 2169235 at *4 ("Prohibiting [former employees] from using, copying, distributing, or destroying information they obtained unlawfully from [Plaintiff] would, if anything, tend to serve the public interest"); DoubleClick Inc. v. Paikin, 402 F. Supp. 2d 1251, 1260 (D. Colo. 2005)(granting injunction enforcing noncompete agreement and noting that "the fact that Colorado statutes permit such agreements demonstrates that enforcing one in these circumstances would not be against the public interest"); I Can't Believe It's Yogurt v. Gunn, No. Civ. A. 94-OK-2109-TL, 1997 WL 599391, at *20 (D. Colo. Apr. 15, 1997)("[t]here is a public interest in the enforcement of a valid covenant not to compete").

The rationale behind these cases and countless others is that a former employee should not be able to injure his former employer and profit from his wrongdoing. The analysis and result should be the same here.

### III. CONCLUSION AND PRAYER

JPMorgan is not asking that Defendant be restrained from working at Morgan Stanley or anywhere else. JPMorgan is instead asking that the Court enter a Temporary Restraining Order preventing Defendant from violating the terms of the Code of Conduct and the Non-Solicitation Agreement by soliciting JPMorgan's clients and using or disclosing JPMorgan's and its clients' confidential information until an evidentiary hearing may be held. Accordingly, JPMorgan requests that the Court grant its application and enter a Temporary Restraining Order.

Thereafter, JPMorgan requests for the reasons stated above, that JPMorgan's motion for a temporary injunction should be granted, pending a final award in the FINRA arbitration between JPMorgan and Defendant.

By: s/ Theodore W. Rosen
Theodore W. Rosen, Esq.
**THEODORE W. ROSEN, P.C.**
3003 East Third Avenue, Suite 205C
Denver, Colorado 80206
Telephone: (303) 837-1767
FAX: (303) 837-1765
E-mail:  twrosen@msn.com

COUNSEL FOR PLAINTIFFS
JPMORGAN CHASE BANK, N.A. and J.P. MORGAN SECURITIES LLC

## **CERTIFICATE OF SERVICE**

I certify that on February 23, 2011 Plaintiff's Memorandum of Law in Support of Their Application for Temporary Restraining Order and Temporary Injunction was served by electronic mail to the following:

>John S. Lutz, Esq.
>FAIRFIELD AND WOODS, P.C.
>Wells Fargo Center, Suite 2400
>1700 Lincoln Street
>Denver, Colorado  80203-4524

>s/ Theodore W. Rosen